1  PAUL S. MALINGAGIO, CAL. BAR NO. 90451
   pmalingagio@sheppardmullin.com

2

3  ORI KATZ, CAL. BAR NO. 209651
   okatz@sheppardmullin.com

4

5  M. REED MERCADO, CAL. BAR NO. 247318
   rmercado@sheppardmullin.com

6

7  MATTHEW R. KLINGER, CAL. BAR NO. 307362
   mklinger@sheppardmullin.com

8

9  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   Four Embarcadero Center, 17th Floor

10 San Francisco, California  94111
   Telephone:    415-434-9100

11 Facsimile:    415-434-3947

12 JEFFREY W. ROBINSON, AK BAR NO. 0805038

13 jeffrey@anchorlaw.com
   ASHBURN & MASON, P.C.

14 1227 West 9th Avenue, Suite 200
   Anchorage, AK  99501

15 Telephone: 907-276-4331
   Facsimile: 907-277-8235

16

17 Attorneys for Plaintiffs
   MARK E. PFEFFER and

18 ROBERT B. ACREE

19

20             **UNITED STATES DISTRICT COURT**

21                  **DISTRICT OF ALASKA**

22

23 MARK E. PEFFER, an individual; and       Case No.
   ROBERT B. ACREE, an individual,

24                                          **COMPLAINT FOR DECLARATORY**
                                            **RELIEF**
                   Plaintiffs,

25

26        v.

27 EVERBANK, a federal savings bank,

                   Defendant.

28

{10708-128-00422200;1}

SMRH:4825-2679.4                                        COMPLAINT

**INTRODUCTION**

1.	Plaintiffs MARK E. PFEFFER and ROBERT B. ACREE (collectively, the "Plaintiffs") file this Complaint for declaratory relief to resolve two disputes with defendant EVERBANK (the "Bank") regarding their potential liability under a guaranty.

2.	First, the guaranty expressly provides that the **maximum** potential liability thereunder is twenty-five percent of the loan balance, and that the potential liability could be less. However, the Bank claims that the guaranty fixes the potential liability at twenty-five percent of the loan balance, and that it cannot be less. The Bank ignores the plain language of the guaranty and relies on a commitment letter signed by the borrower (and not the Plaintiffs) as a basis for its claim, even though the commitment letter was expressly superseded by the guaranty. Therefore, the Plaintiffs seek a declaration that the particular provision of the guaranty at issue sets a maximum amount of potential liability, but does not fix such liability.

3.	Second, the potential liability under the guaranty is established in part by reference to a formula calculated as of the date the loan is accelerated. The Bank claims that the formula should be calculated as of the date that it initially accelerated the loan, even though the Bank subsequently entered into a forbearance agreement that de-accelerated the loan. Under the terms of the forbearance agreement and the other loan documents, the Bank has to re-accelerate the loan, which it has not yet done, in order to determine the potential liability under the guaranty. Therefore, the Plaintiffs seek a declaration that the formula must be calculated as of the date that the loan is re-accelerated.

{10708-128-00422200;1}	-1-

NOW, THEREFORE, the Plaintiffs allege as follows:

## GENERAL ALLEGATIONS

### The Parties

4.      Plaintiff Mark E. Pfeffer is a citizen of the United States and resides in Anchorage, Alaska, which is in this judicial district.

5.      Plaintiff Robert B. Acree is a citizen of the United States and resides in Anchorage, Alaska, which is in this judicial district.

6.      Upon information and belief, the Plaintiffs allege that the Bank is a federal savings bank with its home office in Jacksonville, Florida.

### Jurisdiction

7.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because:

   a.      The matter in controversy exceeds the sum or value of $100,000 exclusive of interest and costs;[1] and

   b.      The matter is between citizens of different states, in that:

      (1)      The Plaintiffs are citizens of the State of Alaska because each resides, and intends to remain permanently domiciled, in Anchorage, Alaska;[2] and

---

[1] *Hunt v. Washington State Apple Advertising Comm'n.*, 432 U.S. 333, 347 (1977) (for diversity jurisdiction purposes, in a declaratory relief action, the amount in controversy is the plaintiff's potential liability).

[2] *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

(2)     The Bank is a citizen of the State of Florida because the Bank directs all of its operation from Jacksonville, Florida, and therefore its "home office" is located there.[3]

**Venue**

8.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

**The Loan and the Guaranty**

9.     The Bank made a $28,600,000 loan to 716 West Fourth Avenue, LLC (the "Borrower"), secured by the Borrower's office building located at 716 West Fourth Avenue, Anchorage, Alaska. The loan is evidenced by the Balloon Promissory Note dated as of December 30, 2014 (the "Note") payable by the Borrower to the order of the Bank. A true and correct copy of the Note is attached hereto as **Exhibit A** and is incorporated herein by this reference.

10.     The Plaintiffs executed the Guaranty Agreement dated as of December 30, 2014 (the "Guaranty"), which applies to certain of the obligations of the Borrower to the

---

[3] 12 U.S.C. § 1464(x) (a federal savings bank is a citizen "only of the state in which such savings association has its home office"); *Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 283 (D. Conn. 2016) ("the term 'Federal savings association' means any Federal savings association or Federal savings bank"); 12 C.F.R. § 561.39 (the home office of a federal savings bank is its "principal office"); 12 C.F.R. § 545.91(a) (the principal office of a federal savings bank is the office from which it directs "All operations"); *see*, *also*, *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, LLC, 2014 WL 3258409, at *6 (D. Colo. July 8, 2014).

Bank under the Note, which are described in detail below.  A true and correct copy of the Guaranty is attached hereto as **Exhibit B** and is incorporated herein by this reference.

**The Initial Default and the Forbearance**

11.     The initial default under the loan occurred on or about on or about March 24, 2016, as a result of an Anchorage Superior Court judge's invalidation of a lease extension for the Borrower's office building in Case No. 3AN-15-05969CI.

12.     Following the initial default, the Bank accelerated the Borrower's obligations under the Note pursuant to a letter to the Borrower dated as of October 26, 2016 (the "Default Notice").  A true and correct copy of the Default Notice is attached hereto as **Exhibit C** and is incorporated herein by this reference.

13.     Following the delivery of the Default Notice, the Borrower, the Plaintiffs and the Bank entered into the Forbearance and Discounted Payoff Agreement dated as of February 21, 2017 (the "Forbearance").[4]  A true and correct copy of the Forbearance is attached hereto as **Exhibit D** and is incorporated herein by this reference.

14.     Pursuant to the Forbearance, the Bank expressly agreed that the Borrower's obligations under the Note were de-accelerated, and the Borrower was given the opportunity to pay off its obligations in full at a discount on or before March 31, 2017.

**The Salient Disputes**

---

[4] Pursuant to <u>Section 6</u> of the Forbearance, the Plaintiffs reserved all rights regarding their liability (if any) under the Guaranty.  Such reservation is hereby reaffirmed and restated in this Complaint.

1    15.    Since March 31, 2017, the Plaintiffs and the Bank have been discussing

2  the Borrower's loan, and two distinct disputes have arisen regarding the Guaranty, as

3  follows:

4

5          a.    *The First Dispute*: the plain language of the Guaranty sets forth

6  the potential liability of the Plaintiffs, and also provides for the maximum amount of such

7  liability.  However, the Plaintiffs understand and believe, and on that basis allege, that the

8  Bank's position is that the Plaintiffs' potential liability is fixed at such maximum amount,

9
10  and that the Bank's position is based upon a superseded commitment letter between the

11  Borrower and the Bank that pre-dates the loan, to which the Plaintiffs are not parties; and

12          b.    *The Second Dispute*: the measurement date that determines the

13
14  amount of the Plaintiffs' potential liability under the Guaranty is the date that the loan is re-

15  accelerated.   However, the Plaintiffs understand and believe, and on that basis allege, that

16  the Bank's position is that such measurement date is October 26, 2016 (the date of the

17  Default Notice), notwithstanding the Bank's agreement to enter into the Forbearance.

18          16.    With respect to the First Dispute:

19
20          a.    Section 1(a) of the Guaranty sets forth precisely which of the

21  Borrower's obligations are guaranteed, defining them as the "Guaranteed Obligations" as

22  follows:

23
24       "(a) [The Plaintiffs] hereby unconditionally, irrevocably and
         absolutely guarantee[] without demand by [the Bank] the full
25       and prompt payment when due, whether by acceleration or
         otherwise, of the following: (i) the Borrower Recourse
26       Obligations, as defined and described in the Note; and (ii) the
         payment and performance of all obligations under the
27       Environmental Indemnity Agreement Regarding Hazardous
         Substances."
28

b.      The "Borrower Recourse Obligations," as defined and described in the Note include, among other things, a prepayment fee (discussed in more detail below), the amount of which varies depending on the date it is measured.[5]

c.      <u>Section 1(c)</u> of the Guaranty provides for a maximum amount of the variable potential liability thereunder in two different scenarios, as follows:

> "[Scenario 1] the collective **maximum amount of [the Plaintiffs'] liability** for the payment of the Guaranteed Obligations shall be twenty-five percent (25%) of the total amount of the unpaid principal balance of and accrued interest on the Note at any time [the Bank] makes demand for payment on this Guaranty, [or Scenario 2] provided that if Tenant fails to renew the term of the Lease beyond May 31, 2024 on or before December 1, 2023, then **the maximum amount of [the Plaintiffs'] liability** for the payment of the Guaranteed Obligations shall be fixed at twenty-five percent (25%) of the total amount of the unpaid principal balance of and accrued interest on the Note as of December 1, 2023" (emphases added)

d.      The foregoing language is plain. It provides for the **maximum** potential liability of the Plaintiffs under the Guaranty in two different scenarios, but does not fix the amount of their potential liability in either scenario.

e.      However, the Plaintiffs understand and believe, and on that basis allege, that the Bank relies upon a commitment letter dated as of November 14, 2014 (the "Commitment Letter") between the Bank and the Borrower to allege that the Guaranty does

---

[5] Specifically, the "Borrower Recourse Obligations" under the Note are "(i) any Prepayment Fee due under [the] Note; (ii) taxes, insurance premium and other amounts advanced by [the Bank] to protect the collateral described in the Security Instrument; and (iii) all attorneys' fees or other costs of collection incurred by [the Bank] pursuant to any of the Loan Documents."

not mean what it plainly states.  Specifically, the second full paragraph on the third page of the Commitment Letter provides:

> "Limited Guaranty: The Loan … shall be jointly and severally guaranteed by [the Plaintiffs], provided that combined [Plaintiffs'] liability [sic] will be limited to a dollar amount not to exceed 25% of the outstanding loan amount. Notwithstanding the foregoing, if the Tenant notified Borrower it is not renewing the lease, the 25% guaranty will be fixed at 25% of the then outstanding loan balance at the time of notification of non-renewal, for the remainder of the loan term, regardless of the loan balance thereafter[.]"

       f.      The Bank appears to take the position that this paragraph of the Commitment Letter somehow modifies Section 1(c) of the Guaranty and somehow fixes the Plaintiffs' liability thereunder at twenty-five percent of the total amount of the unpaid principal balance of and accrued interest on the Note.  As such, based on the Bank's position, the Plaintiffs' liability under the Guaranty is fixed at an amount approximating $6,591,315.28, based on the Plaintiff's estimate of the outstanding principal and interest balance of $26,365,261.03 as of July 17, 2017.  A true and correct copy of the Commitment Letter is attached hereto as **Exhibit E** and is incorporated herein by this reference.

       g.      The Bank appears to ignore the following:

       (1)      Section 23 of the Guaranty, which provides "This Guaranty and the other Loan Documents supersede all prior agreements, including any loan commitment letter and any loan proposals."  The Guaranty, by its terms, expressly supersedes the Commitment Letter;

       (2)      Section 16 of the Forbearance, which provides "Except for any previous modifications which may be described in the recitals to this [Forbearance]

Agreement, and except as specifically modified by this [Forbearance] Agreement, no term or condition of the Note, the Deed of Trust, the Guaranty or the other Loan Documents shall be modified." The Commitment Letter is not described in the recitals to the Forbearance, so it cannot be deemed to modify the Guaranty; and

(3) The fact that the Commitment Letter is not an agreement between the Plaintiffs and the Bank; it was only executed by the Borrower.

17. With respect to the Second Dispute, as noted above, the Guaranty only applies to certain of the Borrower's obligations to the Bank, including a "Prepayment Fee" as defined and described in the Note. Under the Note, the Prepayment Fee is calculated pursuant to a formula set forth therein.

18. Under the Note, the Prepayment Fee is payable "[i]f [the Bank] at any time accelerates this Note after an Event of Default (defined below)."

19. The Plaintiffs understand and believe, and on that basis allege, that that the Bank has taken the position that the Prepayment Fee is to be calculated as of October 26, 2016, which is the date the Bank initially accelerated the loan, as set forth in the Default Notice. Based on the Bank's allegations, the Prepayment Fee would be equal to $1,854,005.16 pursuant to the formula set forth in the Note and an outstanding principal balance of $26,365,261.03 as of October 26, 2016.

20. However, the Bank entered into the Forbearance, which de-accelerated the loan. Specifically, Section 5 of the Forbearance provides that upon the occurrence of a "New Default," the Bank is entitled to "declare the Indebtedness to be immediately due and

payable." If the Bank's position were correct and the loan was never de-accelerated, then this right, which the Bank specifically negotiated in the Forbearance, would be meaningless.

21.     The Plaintiffs estimate that as of July 17, 2017, the outstanding principal balance was $26,365,261.03.  Pursuant to the formula set forth in the Note, based on this estimated balance and after providing for the terms of the Forbearance,[6] as of July 17, 2017, the Prepayment Fee would be $0.  However, the Bank still needs to re-accelerate the loan in order to calculate the precise amount of the Prepayment Fee.   It is clear, however, that the Forbearance precludes the Bank from relying on the Default Notice date of October 26, 2016 to calculate the Prepayment Fee.

**Reservation of Rights**

22.     Nothing in this Complaint or in any other pleading filed in this action is intended to be, nor shall be construed as, an admission of any liability to the Bank on the part of the Plaintiffs under the Guaranty or otherwise.  To the contrary, the Plaintiffs hereby reserve all of their rights, claims and defenses under the Guaranty and the other loan documents, at law and in equity, including without limitation, any rights, claims and defenses related to (i) the unenforceability of the Prepayment Fee because it is an impermissible penalty, (ii) the discharge of the Guaranteed Obligations under the Guaranty when the collateral for the loan is realized upon, and (iii) the unenforceability of the Guaranty because the Plaintiffs are the primary obligors on the loan.

## FIRST CLAIM FOR RELIEF

(For Declaratory Relief Against The Bank With Respect To The First Dispute)

---

[6] Under Section 4(B)(1) of the Forbearance, the Plaintiffs' liability under the Guaranty (if any) must be reduced by $347,223.86.

23. The Plaintiffs reallege and incorporate by reference as though fully set forth herein the allegations of Paragraphs 1 through 22, inclusive, of this Complaint.

24. An actual controversy has arisen and now exists between the Plaintiffs and the Bank with respect to the First Dispute, in that the Plaintiffs contend that:

a. Section 1(c) of the Guaranty provides for the maximum liability of the Plaintiffs under the Guaranty in both scenarios described therein, but does not fix the amount of their liability thereunder in either scenario, and the amount could be less than the maximum; and

b. The Commitment Letter was expressly superseded by the Guaranty and the Forbearance, is of no force or effect, and/or cannot be enforced against the Plaintiffs because they did not sign it.

25. An actual controversy has arisen and now exists between the Plaintiffs and the Bank with respect to the First Dispute, in that the Bank, upon information and belief, contends that:

a. Section 1(c) of the Guaranty fixes the amount of the Plaintiffs' liability under the Guaranty at twenty-five percent of the total amount of the unpaid principal balance of and accrued interest on the Note in both scenarios, based on the Commitment Letter; and

b. The Commitment Letter is in full force and effect, modifies the Guaranty and is enforceable against the Plaintiffs.

26.     Due to the foregoing controversy, the Plaintiffs are entitled to a judicial determination regarding the First Dispute.  Specifically, the Plaintiffs respectfully request a judicial determination that (a) Section 1(c) of the Guaranty provides for the maximum amount of potential liability in both scenarios described in the Note and does not fix the amount of the potential liability under the Guaranty in any scenario, and (b) the Commitment Letter (i) is of no force or effect, (ii) does not modify the Guaranty, and/or (iii) is not enforceable against the Plaintiffs.

## SECOND CLAIM FOR RELIEF

(For Declaratory Relief Against The Bank With Respect To The Second Dispute)

27.     The Plaintiffs reallege and incorporate by reference as though fully set forth herein the allegations of Paragraphs 1 through 26, inclusive, of this Complaint.

28.     An actual controversy has arisen and now exists between the Plaintiffs and the Bank with respect to the Second Dispute, in that the Plaintiffs contend that:

    a.     The Forbearance de-accelerated the loan;

    b.     The amount of the Prepayment Fee must be calculated as of the date that the Bank re-accelerates the loan; and

    c.     As of the date hereof, Bank had not yet re-accelerated the loan.

29.     An actual controversy has arisen and now exists between the Plaintiffs and the Bank with respect to the Second Dispute, in that the Bank, upon information and belief, contends that:

    a.     The loan remained accelerated from and after October 26, 2017 notwithstanding the Forbearance; and

1     b.    The amount of the Prepayment Fee is to be calculated as of

2   October 26, 2016, the date of the Default Notice.

3     30.    Due to the foregoing controversy, the Plaintiffs are entitled to a judicial

4   determination regarding the Second Dispute.  Specifically, the Plaintiffs respectfully request

5   a judicial determination that (a) the loan was de-accelerated by the Forbearance, (b) the Bank

6   has not, as of the date hereof, re-accelerated the loan, and (c) the Prepayment Fee is to be

7   calculated as of the date of such re-acceleration, and not as of October 26, 2016.

8
                                    **PRAYER**

9
            WHEREFORE, the Plaintiffs respectfully request that the Court enter the

10  following declarations and grant the other relief requested below:

11  On the First Claim for Relief:

12
            1.    That this Court declare that (a) Section 1(c) of the Guaranty provides

13  for the maximum potential liability of the Plaintiffs under the Guaranty in all scenarios and

14  does not fix the potential liability in any scenario, (b) the Commitment Letter was expressly

15  superseded by the Guaranty and the Forbearance, and is of no force or effect, and/or (c) the

16  Commitment Letter cannot be enforced against the Plaintiffs, all as more specifically set

17  forth above;

18
            2.    For fees, costs and expenses incurred (including, without limitation,

19  attorneys' fees, costs and expenses incurred), pursuant to Section 13 of the Guaranty; and

20
            3.    For all other relief as deemed proper by the Court.

{10708-128-00422290;1}
SMRH:482572079.7

On the Second Claim for Relief:

        1.     That this Court declare that (a) the Forbearance de-accelerated the loan, (b) the Bank has not, as of the date hereof, re-accelerated the loan, and (c) the Prepayment Fee is to be calculated as of the date of such re-acceleration, and not as of October 26, 2016, all as more specifically set forth above;

        2.     For fees, costs and expenses incurred (including, without limitation, attorneys' fees, costs and expenses incurred), pursuant to Section 13 of the Guaranty; and

        3.     For all other relief as deemed proper by the Court.


DATED:  July 17, 2017        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                By:  s/Paul S. Malingagio
                                      PAUL S. MALINGAGIO
                                      ORI KATZ
                                      M. REED MERCADO
                                      MATTHEW R. KLINGER


                                  ASHBURN & MASON, P.C.

                                  By:  s/Jeffrey W. Robinson
                                        JEFFREY W. ROBINSON


                                  Attorneys for Plaintiffs
                                  MARK E. PFEFFER and
                                  ROBERT B. ACREE